Debra L. Wabnik (dw-2468)
Amanda B. Slutsky (as-5655634)
Stagg Wabnik Law Group LLP
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4550
dwabnik@staggwabnik.com
aslutsky@staggwabnik.com

*Attorneys for Plaintiff*
*Tarik Fellah*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TARIK FELLAH,

                    Plaintiff

      -against-

CITY UNIVERSITY OF NEW YORK ("CUNY");
HUNTER COLLEGE; JOSEPH FOELSCH, Hunter
College Public Safety Director; ROBERT LYONS,
CUNY Peace Officer Lieutenant,
MICHELLE MILLER, CUNY Peace Officer, and
JOSE GUZMAN, CUNY Peace Officer

                 Defendants.
------------------------------------------------------------X

Civil Action No.: 20-cv-6423(JPC)

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Tarik Fellah ("Plaintiff"), by and through his attorneys, Stagg Wabnik Law Group LLP, as and for his Amended Complaint against Defendants City University of New York ("CUNY"), Hunter College ("Hunter College"), Joseph Foelsch ("Foelsch"), Robert Lyons ("Lyons"), Michelle Miller (Miller"), and Jose Guzman ("Guzman") (collectively "Defendants") herein alleges as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiff, who is North African, of Arab descent, from Morocco, and a practicing Muslim, worked for Defendants as a Campus Security Assistant ("CSA") until he was viciously bashed in the head with a shovel in what could only be described as a discriminatory

and xenophobic attack. This savage attack was the culmination of years of unremedied discriminatory treatment by Daniel Cregan ("Cregan"), Plaintiff's coworker.

2.     This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; the Civil Rights Act of 1871, 42 U.S.C. § 1981 and 42 U.S.C § 1983; the New York State Human Rights Law ("NYSHRL"), codified as N.Y.S. Executive Law, § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), codified as the Administrative Code of the City of New York Title 8-101 *et seq.*, for discrimination on the basis of Plaintiff's religion, national origin, race, ethnicity, and status as an immigrant.

3.     Defendants willfully and/or recklessly ignored complaints made by Plaintiff and other workers of religious, racial and anti-immigrant harassment and threats of violence at the workplace by Cregan. As a result of Defendants' reckless acts and omissions, Defendants caused Plaintiff to be subjected to a hostile work environment for three years, culminating in an unprovoked racist, anti-immigrant and anti-Muslim assault that left Plaintiff seriously injured and disabled.

## JURISDICTION AND VENUE

4.     Plaintiff received a Right to Sue letter from the United States Equal Employment Opportunity Commission with a cover letter dated March 4, 2020. This lawsuit was commenced within 90 days of receipt of the aforementioned Right to Sue letter in the Supreme Court, State of New York, County of New York.

5.     Pursuant to CPLR § 503[a] and CPLR § 505[a] venue was set in New York County because all the Defendants are located in New York County and all the actions complained of herein occurred in New York County.

6.     On or about August 13, 2020, Defendants removed this case to the United States District Court, Southern District of New York.

## PARTIES

7.   Plaintiff is a member of the North African race, Arab ethnic group who practices the Muslim faith. He was born in Morocco and emigrated to the United States. Plaintiff is a resident of New York State. He was employed by CUNY as a CSA and was assigned to the Department of Public Safety at Hunter College for six years prior to the assault that left him injured and disabled on February 27, 2019.

8.   Defendant CUNY is a public authority organized pursuant to New York State Education Law § 6201, *et seq*., and operates colleges, graduate schools and other higher education programs within the City of New York. CUNY has over 40,000 employees, including Plaintiff.

9.   Defendant Hunter College is a college operated by CUNY. Hunter has over 3,500 employees, including Plaintiff.

10.   At all relevant times herein, Defendant Foelsch was and is the Director of Public Safety for Hunter College, and has the power at CUNY and Hunter College to, *inter alia*, hire and fire employees, establish and pay their wages, set their work schedules, and maintain their employment records.  Foelsch oversees all the public safety staff, including Plaintiff. In his role, Foelsch also had the power to receive and review discrimination complaints, and to remedy a discrimination complaint. Foelsch failed to: (1) maintain a work environment free of discrimination, harassment and violence despite complaints by Plaintiff and others; (2) establish or enforce procedures to protect workers like Plaintiff from discrimination, harassment and violence, or to provide adequate supervision and training; and (3) ensure that workers like Plaintiff were protected from racist, religious, ethnic and anti-immigrant bias, harassment and violence.

3

11.  At all relevant times herein, Defendant Lyons was one of Plaintiff's senior supervisors, and has the power at CUNY and Hunter College to, *inter alia*, hire and fire employees, establish and pay their wages, set their work schedules, assign work duties, receive and review and remedy discrimination complaints. Lyons reports to Foelsch.  Lyons failed to: (1) maintain a work environment free of discrimination, harassment and violence despite complaints by Plaintiff and others; (2) establish or enforce procedures to protect workers like Plaintiff from discrimination, harassment and violence; and (3) ensure that workers like Plaintiff were protected from racist, religious and anti-immigrant bias, harassment and violence.

12.  At all relevant times herein, Defendant Miller was a CUNY Peace Officer ("CPO") and one of Plaintiff's immediate supervisors. Miller would assign work duties, ensure Plaintiff and other employees were performing their duties, and had the power receive, review and remedy discrimination complaints. Miller failed to: (1) maintain a work environment free of discrimination, harassment and violence despite complaints by Plaintiff and others; (2) establish or enforce procedures to protect workers like Plaintiff from discrimination, harassment and violence; and (3) ensure that workers like Plaintiff were protected from racist, religious and anti-immigrant bias, harassment and violence.

13.  At all relevant times herein, Defendant Guzman was a CPO and one of Plaintiff's immediate supervisors. Guzman would assign work duties, ensure Plaintiff and other employees were performing their duties, and had the power receive, review and remedy discrimination complaints. Guzman failed to: (1) maintain a work environment free of discrimination, harassment and violence despite complaints by Plaintiff and others; (2) establish or enforce procedures to protect workers like Plaintiff from discrimination,

4

harassment and violence; and (3) ensure that workers like Plaintiff were protected from racist, religious and anti-immigrant bias, harassment and violence.

## THE FACTS

14.   Plaintiff was employed by CUNY as a CSA for the Hunter College Department of Public Safety for approximately six years. On or about February 27, 2019, Plaintiff was brutally attacked in an unprovoked racist assault by Cregan at the Voorhees Building, a facility operated by Hunter College at 450 West 41st Street New York, New York 10018 (the "Assault").

15.   Cregan is Caucasian. Before Cregan was discharged following his arrest on February 27, 2019, Cregan worked as a facilities maintenance engineer at the Voorhees Building.

16.   For approximately three years, Plaintiff worked as a security guard at the Voorhees Building.

17.   The Voorhees Building is a little used annex located several miles away from the main Hunter College campus. When Plaintiff began working at the Voorhees Building, the only people present in the building during the 6 AM to 2:30 PM shift were Cregan, Plaintiff, and a CPO. Pursuant to New York Education Law § 6206[6] and New York Criminal Procedure Law ("CPL") § 2.10 CPOs are law enforcement officers who have the power to make arrests and to use force to enforce the law.

18.   From the first day Cregan and Plaintiff worked together, Cregan repeatedly harassed, threatened and intimidated Plaintiff because of his Muslim religion. For example, in one incident, Cregan purchased a pizza that he offered to share with Plaintiff. Plaintiff asked Cregan what the topping was and Cregan said it was beef pepperoni. Cregan knew that Plaintiff is a Muslim who cannot eat pork. The pizza topping actually contained pork. After

5

Plaintiff ate some of the pizza, Cregan laughed and said (paraphrasing) "I got you to eat pork! I told you pork is good. Don't worry about your religion."

19.   In another incident, Cregan taunted Plaintiff saying (paraphrasing): "The Muslims are all terrorists!" Plaintiff tried to ignore his taunting but Cregan would not stop and asked "why do Muslims like to do terrorist activity?" When Plaintiff said he disagreed, Cregan said Muslims are the only ones who blow places up. This was not an isolated incident as Cregan repeatedly made comments to Plaintiff that Muslims are terrorists and Cregan only owns a gun because he does not trust Muslims, like Plaintiff.

20.   Cregan did not stop there. He told Plaintiff that people should not practice the Muslim faith because it is the "wrong" religion. Cregan also asked Plaintiff about Plaintiff's opinion on ISIS. Plaintiff did not want to engage in a political discussion at work, let alone with the bigoted Cregan, so Plaintiff responded he had no comment. Cregan continued on and said that Plaintiff, as a Muslim, should not continue practicing his religion because Muslims kill innocent people. Plaintiff tried to deescalate the situation, but could not walk away because he was the only employee in the lobby at the time and could not leave his post.

21.   Not only did Cregan harbor anti-Muslim sentiments, but Cregan also stated his anti-immigrant beliefs. Cregan claimed immigrants should not be entitled to the "American Dream." Cregan said he did not trust immigrants and that immigrants are ruining the country.

22.   On more than one occasion, Plaintiff complained to Miller, Guzman, and CPO Sergeant Brown (first name unknown) about Cregan's discriminatory comments. Although Miller, Guzman, and Brown were Plaintiff's immediate supervisors, they did not take any action and told Plaintiff to complain to Lyons.

23.   Plaintiff complained to Lyons a few separate times regarding Cregan's discriminatory conduct. Specifically, Plaintiff complained that Cregan called Plaintiff and all

Muslims terrorists. Lyons sat by and did nothing while Plaintiff was forced to deal with Cregan's increasingly violent and discriminatory behavior.

24.   In 2017, CPO Ajiokumbo Falade ("Falade") was assigned to work the shift with Cregan and Plaintiff. Falade is an immigrant from Nigeria who is Black. Falade became another target for Cregan's discriminatory abuse. On or about July 6, 2017, several minutes before the end of their shift, Falade and Plaintiff started their personal cars parked in the loading dock so they would be ready to leave at 2:30 PM when their shifts ended. Although this was standard practice at this location, Cregan became enraged and took the key out of Falade's car. Cregan then confronted Falade screaming at him, calling him a "stupid fuck" and advancing to where he was directly in front of Falade, with his hands up and waving his finger in Falade's face in a threatening manner.

25.   Although Falade was an armed peace officer, Falade tried to avoid a confrontation with Cregan, who was enraged and physically threatening him. Falade asked Cregan to stand back and said that if Cregan had a problem he should speak to Falade's supervisor, Lyons, who is also Black.

26.   Cregan said that he didn't "give a fuck about Lieutenant Lyons." Cregan then screamed that he was the boss of security at the Voorhees Building because he made more money than Lyons or even the Public Safety Director himself. Cregan screamed that from now on Falade needed to get Cregan's permission to do anything at the Voorhees Building.

27.   Plaintiff heard Cregan screaming and feared that Cregan might assault Falade. Plaintiff ran to the lobby where Cregan was berating Falade. Cregan then started advancing on Plaintiff in a threatening manner screaming words to the effect: "You dumb fucks! You stupid assholes!" Falade, Cregan, and Plaintiff all prepared to clock out when Cregan started screaming and cursing at Plaintiff and pointing his finger in Plaintiff's face saying

7

(paraphrasing) "why are you dumb and stupid you fucking dumb ass! Fuck you guys! Stupid assholes!" As Cregan entered his car he screamed at Falade and Plaintiff "watch what's going to happen to you assholes!" Plaintiff understood that statement to be a threat of physical violence.

28. After Cregan left, Plaintiff and Falade called their supervisors, Miller and Guzman, to report Cregan's abuse and threats. Miller said she did not know what to do and shortly thereafter called Plaintiff and Falade back and advised them to each send a written report of the incident to Foelsch. Other than advising Plaintiff and Falade to make written reports of Cregan's abuse and threats, Miller and Guzman took no other action to protect Plaintiff from further harassment, threats or violence.

29. On or about July 7, 2017, at 8:39 AM, Plaintiff sent an email to Foelsch, Lyons and CPO Sergeant Romane Pierre, another Public Safety supervisor at Hunter College. Plaintiff's email described the incident the day before where Cregan abused and threatened Plaintiff and Falade. On information and belief, Falade made a written report to Defendants on the same day.

30. In or around 2017, after Plaintiff complained to Lyons, an informal meeting was held with Plaintiff, Cregan, Cregan's supervisor, one of Plaintiff's supervisor, and Falade. Instead of Cregan being reprimanded for his reprehensible conduct, Plaintiff was told to try to get along with everyone, including Cregan, and to keep the workplace professional. Plaintiff told everyone at the meeting that he was not comfortable with Cregan, and explained Cregan's recurring anti-Muslim and anti-immigrant comments. At this time, Plaintiff requested one of many transfers. Plaintiff was ignored and left in an unsafe workplace.

31. In response to the complaints by Plaintiff and Falade, the Department of Public Safety reassigned Falade to a later shift, leaving Plaintiff alone with Cregan during the 6 AM

to 2:30 PM shift. Shortly thereafter, Falade was transferred out of the Voorhees Building and not replaced.

32.   Despite the complaints, Defendants took no action to protect Plaintiff from further harassment, abuse or violence by Cregan. Defendants did not discharge, discipline or counsel Cregan in response to his violent and abusive behavior. After Falade's transfer in 2018 there was no peace officer stationed in the Voorhees Building and Plaintiff worked alone with Cregan during their shifts until the Assault.

33.   Defendants knew that Cregan was Caucasian and that the targets of Cregan's threats were immigrants Black and of Arab ethnicity. Defendants knew that Plaintiff is a Muslim, an Arab, a North African, and an immigrant from Morocco, yet failed to take any remedial action against Cregan.

34.   By changing Falade's work assignment to remove Falade from contact with Cregan, Defendants evinced an appreciation of the seriousness of Cregan's threats against Falade and Plaintiff, and the hostile work environment they created.

35.   By leaving Plaintiff alone in a workplace with Cregan, Defendants knowingly, recklessly and callously exposed Plaintiff to a hostile work environment where Plaintiff was subject to racist, anti-Muslim, anti-Arab, and anti-immigrant harassment and violence on a regular basis.

36.   On information and belief, Defendants received prior complaints about Cregan's violent, racist, bigoted, and anti-immigrant behavior. As a result of these prior incidents Cregan, who had previously worked on the main campus of Hunter College and at Hunter College's School of Social Work, was transferred to the isolated location at the Voorhees Building. Despite the complaints by Plaintiff, Falade and others, Defendants took no action to discipline or train Cregan or to protect Plaintiff from harassments, threats, and violence.

37.  Plaintiff could not escape Cregan for three years. Every time they saw each other, Cregan made a discriminatory and hateful comment about Plaintiff's religion, race, national origin, ethnicity, and/or status as an immigrant.

38.  Plaintiff repeatedly begged for a transfer, but was ignored. It was not until Cregan viciously attacked Plaintiff that Defendants took any action, despite being on notice of Cregan's hostile and discriminatory behavior for at least two years.

39.  On or about February 27, 2019, Plaintiff arrived for work a few minutes after the beginning of the shift at 6 AM. At the beginning of the shift, it was standard procedure for Cregan to move the Hunter College van out of the driveway so Plaintiff could park his personal car in the loading dock. When Plaintiff got out of his car, Cregan started screaming that he was tired of Plaintiff always coming to work late. Plaintiff replied he was not late. Cregan insisted that Plaintiff was late and screamed words to the effect "we need to end this now!" Cregan then advanced on Plaintiff screaming and poked Plaintiff in the chest. Plaintiff said words to the effect of "don't touch me." Cregan then screamed at Plaintiff again and punched Plaintiff several times, knocking Plaintiff to the ground.

40.  Plaintiff was helplessly lying on his back on the ground when Cregan seized a metal shovel and hit Plaintiff in the head several times knocking him unconscious. Cregan continued to viciously strike Plaintiff on the head with the shovel while Plaintiff was unconscious.

41.  CSA Christopher Scott Hiller ("Hiller"), whose shift was ending, witnessed the attack. Cregan, who was enraged, refused Hiller's order to cease hitting Plaintiff with the shovel and Cregan attempted to leave the scene but was arrested by New York City police officers who responded to an emergency call reporting the assault on Plaintiff. Cregan was named in the New York County indictment 848\2019 charging him with assault in the second

degree (P.L. 120.05(2)) and criminal possession of a weapon in the third degree (P.L. 265.02(1)). Cregan's trial on those charges has been adjourned during the COVID-19 related closures of the New York State courts.

42.   Plaintiff was taken unconscious to the emergency room at Bellevue Hospital by ambulance where he was treated for injuries to his head, neck, mid and lower back, spine, left shoulder, and left hip. Plaintiff still suffers from severe pain and headaches, and has limited mobility. Plaintiff has been unable to return to work since the Assault. Plaintiff continues to receive physical therapy and medication due to his injuries.

43.   Plaintiff continues to experience anxiety and insecurity following the Assault and fears for his safety. Plaintiff is still experiencing physical and emotional pain and suffering as a result of Cregan's assault and threats. Plaintiff rarely sleeps, and when he does, he has nightmares of Cregan attacking him.

**FIRST CAUSE OF ACTION**
**AS AGAINST CUNY AND HUNTER COLLEGE**
**(Hostile Work Environment in Violation of Title VII)**

44.   Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth herein.

45.   By taking no action to protect Plaintiff from religious, racial, ethnicity, and national origin harassment and violence by Cregan, CUNY and Hunter deliberately, recklessly and negligently maintained and subjected Plaintiff to a hostile work environment where Plaintiff endured abuse, harassment and humiliation because of Plaintiff's Muslim faith, his national origin as a Moroccan, his race as North African, and his Arab ethnicity. Ultimately, Plaintiff became the victim of a predictable vicious assault at a hostile workplace that left Plaintiff disabled and unable to return to work.

46.   Cregan's conduct was continuous and severe.

47.  Because CUNY and Hunter College knew about Cregan's conduct, they are liable for Cregan's racist and xenophobic conduct toward Plaintiff.

48.  As a result of Defendants' actions, Plaintiff was assaulted, physically injured and disabled. Plaintiff also suffered physical pain and severe emotional distress, and psychological harm as a result of Cregan's comments, Defendants' failure to take remedial action, and the Assault.

49.  Defendants discriminated against Plaintiff on the basis of race, religion, national origin, and ethnicity through a pattern and practice of fostering, condoning, accepting, ratifying and otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive race, religion, ethnicity, and national origin discrimination of Plaintiff.

50.  Defendants, through Cregan, created a hostile work environment for Plaintiff by embarrassing and humiliating Plaintiff, and Defendants failed to remedy it when Plaintiff complained.

51.  By engaging in the foregoing conduct, CUNY and Hunter College created a hostile work environment for Plaintiff because of his race, religion, ethnicity, and national origin in violation of his rights under Title VII.

52.  By engaging in the foregoing conduct, CUNY and Hunter College acted with malice and/or reckless disregard for Plaintiff's rights under Title VII.

53.  As a result of Defendants' harassment and hostile work environment in violation of Title VII, Plaintiff suffered and continues to suffer severe physical injury, emotional distress, loss of enjoyment of life, lost wages, and other damages.

54.  Plaintiff was damaged in an amount which will be determined at trial, and Plaintiff is entitled to punitive damages and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
### (Discrimination Based on Race in Violation of 42 U.S.C. § 1981)

55.   Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth herein.

56.   Plaintiff is a member of a protected class in that he is of North African race.

57.   Plaintiff, as described *supra*, was subject to inappropriate and discriminatory conduct by Defendants based on Plaintiff's race.

58.   Defendants discriminated against Plaintiff on the basis of race in the making, performance, enforcement and modification of his employment with Defendants, and by not allowing Plaintiff to enjoy all the benefits, privileges, terms and conditions of his employment relationship with Defendants in the same way white employees did.

59.   Plaintiff suffered adverse actions as a result of Defendants' conduct by, *inter alia*, being subject to regular and repeated discriminatory comments, a hostile work environment, a physical assault, and not being treated in a manner as similarly situated individuals working for Defendants who were white.

60.   The conduct of Defendants as alleged above violated 42 U.S.C. § 1981.

61.   By engaging in the foregoing conduct, Defendants acted with malice and/or with reckless disregard for Plaintiff's rights under Section 1981.

62.   As a result of the discrimination, Plaintiff suffered severe physical injury, emotional distress, loss of enjoyment of life, lost wages, and other damages.

63.   Plaintiff was damaged in an amount that will be determined at trial, and Plaintiff is entitled to punitive damages and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**THIRD CAUSE OF ACTION**
**AS AGAINST ALL DEFENDANTS**
**(Discrimination in Violation of 42 U.S.C. § 1983)**

64.  Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth herein.

65.  Plaintiff is North African, Moroccan, of Arab descent, and Muslim.

66.  Plaintiff was repeatedly targeted by Cregan based upon Plaintiff's race, ethnicity, national origin, and religion by, *inter alia*, Cregan giving Plaintiff pizza with pork in it knowing Plaintiff cannot eat pork due to his religion; telling Plaintiff that all Muslims are terrorists and partake in terrorist activity, and telling Plaintiff to practice a different religion because the Muslim faith is the wrong religion.

67. Plaintiff complained to Lyons, Miller, Guzman, and Brown about Cregan's discriminatory remarks and actions. They did not do anything to remedy the discrimination and harassment, and simply ignored Plaintiff.

68.  The Fourteenth Amendment to the U.S. Constitution entitles citizens to equal protection before the law and due process.

69.  Defendants received complaints from Plaintiff that he was being harassed and discriminated against based upon his race, ethnicity, national origin, and religion. Defendants ignored Plaintiff's complaints, failed to investigate the complaints, and did not remedy the harassment and discrimination. As a result, Defendants condoned the discrimination.

70.  As a result of Defendants' ignoring the discrimination and harassment perpetrated by Cregan and condoning Cregan's discriminatory and abusive acts, Plaintiff was brutally assaulted by Cregan because of his race, ethnicity, national origin, and religion.

71.  Defendants, by ignoring Plaintiff's complaints of discrimination and harassment and condoning Cregan's discrimination and harassment, violated Plaintiff's constitutional

rights of equal protection and due process pursuant to the Fourteenth Amendment of the United States Constitution.

72.   Defendants' omissions and inactions made them a participant and conspirator to the discriminatory and violent actions of Cregan.

73.   Defendants' omissions and inactions amount to a policy and practice of ignoring complaints of discrimination and condoning discrimination and harassment based upon race, ethnicity, religion, and national origin.

74.   Plaintiff was physically beaten and psychologically damaged as a result of Defendants' inactions and policies condoning discrimination and harassment in violation of his constitutional rights, to which he is entitled to damages, including attorneys' fees, in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (Hostile Work Environment in Violation of Executive Law § 296 *et seq.*)

75.   Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth herein.

76.   New York Human Rights Law § 296(1)(h) provides that: "It shall be an unlawful discriminatory practice . . . for any employer . . . to subject an individual to harassment because of race. . . national origin . . . [or] religion . . . regardless of whether such harassment would be considered severe or pervasive . . . such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions of privileges of employment because of the individual's membership in one or more of these protected categories . . . nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the employee's treatment must be compared . . . ."

77.  Defendants discriminated against Plaintiff on the basis of his race, national origin, ethnicity, and religion in violation of Executive Law § 296(1)(h) through a pattern and practice of fostering, condoning, accepting, ratifying and otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive discrimination of Plaintiff.

78.  Defendants created a hostile work environment for Plaintiff by intentionally ignoring Cregan's harassing, embarrassing, and humiliating conduct toward Plaintiff, and by failing to remedy it when Plaintiff complained.

79.  Defendants harassed Plaintiff as described above because of his race, national origin, religion, and ethnicity.

80.  Based on the foregoing, Defendants created a hostile work environment for Plaintiff because of his race, national origin, religion, and ethnicity in violation of Executive Law § 296(1)(h).

81.  As a direct and proximate result of Defendants' harassment and hostile work environment in violation of Executive Law § 296(1)(h), Plaintiff suffered, and continues to suffer, monetary losses, including but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief.

82.  As a direct and proximate result of Defendants' harassment and hostile work environment in violation of Executive Law § 296(1)(h), Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages.

83.   As a direct and proximate result of Defendants' unlawful and discriminatory actions in violation of Executive Law § 296(1)(h), Plaintiff is entitled to punitive damages, plus attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**AGAINST THE INDIVIDUAL DEFENDANTS**
**(Aiding and Abetting Discrimination in Violation of Executive Law § 290 *et seq*)**

84.   Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth herein.

85.   New York Human Rights Law § 296(6) provides that: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

86.   As detailed above, Foelsch, Lyons, Miller, and Guzman (the "Individual Defendants") all engaged in conduct that created a discriminatory and hostile work environment based on race, religion, national origin, and ethnicity.

87.   The Individual Defendants knowingly and/or recklessly aided, abetted, incited, compelled, and coerced the unlawful employment practices, and discrimination against Plaintiff in violation of Executive Law § 296(6). Plaintiff suffered and continues to suffer, monetary losses, including but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief.

88.   Plaintiff also suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages.

17

89.  As a direct and proximate result of the Individual Defendants' unlawful and discriminatory actions in violation of Executive Law § 296(6), Plaintiff is entitled to punitive damages, plus attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**(Negligent Supervision and Retention)**

90.  Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth herein.

91.  On a daily basis for a three-year period, Cregan antagonized, discriminated, and harassed Plaintiff by making comments about Plaintiff's race, religion, national origin, and ethnicity, and threatening Plaintiff's physical safety.

92.  Plaintiff complained to Foelsch, Lyons, Miller, and Guzman on multiple occasions about Cregan's conduct and Cregan's increasingly violent threats toward Plaintiff. All of Cregan's threats ultimately led to the Assault, leaving Plaintiff permanently and severely injured.

93.  Defendants knew about Cregan's propensity for violence based upon Cregan's altercation with Falade, and threatening Falade with physical violence.

94.  Upon information and belief, Defendants also knew about Cregan's propensity for violence because Defendants received prior complaints about Cregan and ultimately transferred Cregan to the Voorhees Building after he previously worked on the main campus of Hunter College.

95.  Defendants, as Plaintiff's employers, had a duty to Plaintiff to maintain a safe work environment, free from discrimination and harassment.

96.  Defendants knew about Cregan's propensity for violence not only from Plaintiff's voluminous complaints, but also complaints from Falade, and upon information and belief, other CUNY employees.

97.  Defendants knew Cregan was unfit for his employment duties as engineer based upon his violent tendencies and constant harassment of employees.

98.  Defendants breached their duty of care they owed to Plaintiff by failing to properly supervise Cregan and retaining Cregan as an employee despite numerous complaints of Cregan's conduct and increasingly violent behavior.

99.  By retaining Cregan as an employee, Defendants continued to place Plaintiff and other employees at risk for harassment and injury.

100. As a result of retaining and failing to supervise Cregan, Plaintiff was viciously attacked, and suffers from permanent and severe injuries to which he is entitled to damages in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### <u>(Hostile Work Environment in Violation of the New York City Administrative Code)</u>

101. Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth herein.

102. Pursuant to New York City Human Rights Law 8-107 *et seq.*, it is an unlawful employment practice for an employer to create or condone a work environment permeated with discriminatory intimidation that is more than trivial to alter the conditions of Plaintiff's work environment.

103. Plaintiff was a member of a protected class under NYCHRL because he is North African, Moroccan, a practicing Muslim, an immigrant, and of Arab descent. Based upon Defendants' discriminatory and harassing acts and practices as alleged above, Plaintiff was

19

subjected to a workplace which was permeated with discriminatory intimidation, ridicule and insult that was sufficiently more than trivial to alter the conditions of his work environment.

104. Defendants condoned the discriminatory acts and practices as alleged above and as a result Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary and compensatory damages for, *inter alia*, mental anguish, emotional distress and humiliation.

105. Defendants acted intentionally and with reckless indifference to Plaintiff's statutory rights under NYCHRL § 8-107 *et seq*. and are thereby liable to plaintiff for all available damages under the NYCHRL.

106. As described above, Defendants subjected Plaintiff to a hostile work environment because of his race, ethnicity, status as an immigrant, national origin, and religion by, among other things, subjecting Plaintiff to a hostile work environment; refusing to transfer Plaintiff; and otherwise treating Plaintiff in a disparate manner as compared to non-Moroccan, non-Arab, non-North African, non-immigrant, and non-Muslim employees.

107. As a direct and proximate result of Defendants' race, religion, ethnicity, national origin, and immigrant-based discrimination in violation of the NYCHRL, Plaintiff has been damaged, including lost compensation and benefits, and emotional distress and humiliation.

108. Defendants' conduct was willful, reckless, outrageous, intentional and/or malicious, and Plaintiff is entitled to punitive damages and attorneys' fees.

**EIGHTH CAUSE OF ACTION**
**AGAINST THE INDIVIDUAL DEFENDANTS**
**(Aiding and Abetting Discrimination in**
**Violation of New York City Administrative Code)**

109. Plaintiff repeats and realleges and every paragraph set forth above as if fully set forth herein.

20

110. Under NYCHRL 8-107(6), "it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

111. As detailed above, the Individual Defendants aided and abetted Defendants' discrimination and harassment by participating in the discrimination and creating the hostile work environment to which Plaintiff was subjected to, in violation of NYCHRL Title 8-107.

112. As a result of the discrimination, hostile work environment, and harassment in which the Individual Defendants participated, Plaintiff suffered financial losses, extreme emotional distress, and physical illnesses and manifestations of the extreme emotional distress.

113. Defendants' conduct was willful, reckless, outrageous, intentional and/or malicious, and Plaintiff is entitled to punitive damages and attorneys' fees.

## JURY DEMAND

114. Plaintiff demands a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the federal laws, the laws of the State of New York, and the laws of the City of New York;

B. Awarding Plaintiff damages in an amount to be determined at trial plus interest to compensate Plaintiff for all monetary and/or economic damages, including but not limited to past and future income, wages, compensation, seniority and other benefits of employment;

C.  Awarding Plaintiff damages in an amount to be determined at trial plus interest to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering and other physical and mental injuries;

D.  Awarding Plaintiff punitive damages in an amount to be determined at trial;

E.  Awarding Plaintiff costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

F.  Awarding Plaintiff such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
       January 29, 2021

Stagg Wabnik Law Group LLP

By: /s/Debra L. Wabnik
    Debra L. Wabnik (dw-2468)
    Amanda B. Slutsky (as-5655634)
    *Attorneys for Plaintiff*
    *Tarik Fellah*
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4550
dwabnik@staggwabnik.com
aslutsky@staggwabnik.com