UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                   :
TARIK FELLAH,                                                       :
                                                                   :
                            Plaintiff,                             :
                                                                   :
                                                                   :            20 Civ. 6423 (JPC)
             -v-                                                   :
                                                                   :            OPINION AND ORDER
CITY UNIVERSITY OF NEW YORK, HUNTER                                :
COLLEGE, JOSEPH FOELSCH, ROBERT LYONS,                             :
MICHELLE MILLER, and JOSE GUZMAN,                                  :
                                                                   :
                            Defendants.                            :
                                                                   :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiff Tarik Fellah brings employment discrimination claims against his former employer, the City University of New York ("CUNY"), CUNY's Hunter College, and several of his supervisors, Joseph Foelsch, Robert Lyons, Michelle Miller, and Jose Guzman. Fellah faults Defendants for their handling of the conduct of one of his coworkers, Daniel Cregan, who subjected Fellah to racial, religious, and anti-immigrant harassment for several years culminating in a brutal physical attack on February 27, 2019. Miller has moved to dismiss the seven claims brought against her.

Miller's motion is granted in part and denied in part. Because Fellah has failed to adequately plead Miller's personal involvement in discriminatory conduct or the requisite discriminatory intent, his claims against Miller under 42 U.S.C. §§ 1981 and 1983 are dismissed. His claim against Miller for aiding and abetting a hostile work environment under the New York State Human Rights Law (the "NYSHRL") fails for a similar reason. Fellah alleges that Miller was a Peace Officer at CUNY, which does not qualify as an "employer" for purposes of the

NYSHRL.  His hostile work environment claim against her under section 296(1)(h) of that statute therefore cannot survive.  Similarly, because Fellah has failed to plead that Miller was Cregan's supervisor, his negligent supervision and retention claim against Miller must be dismissed.  Fellah has adequately pleaded "employee" liability for a hostile work environment under section 8-107(1)(a) of the New York City Human Rights Law (the "NYCHRL"), as well as aiding and abetting a hostile work environment under the NYCHRL.  The Court declines to determine prior to discovery whether Miller's conduct in this regard is more properly adjudicated under the aiding and abetting or direct liability provision of the NYCHRL.

The hostile work environment claim against Miller under a direct liability theory pursuant to NYSHRL section 296(1)(h) is dismissed with prejudice because a Peace Officer does not qualify as an "employer" as a matter of New York human rights law.  The other dismissals are without prejudice to Fellah filing a Second Amended Complaint in the event he is able to cure the pleading deficiencies discussed below.

## I.  Background

### A.    Facts[1]

CUNY operates higher educational programs in New York City, including Hunter College. Am. Compl. ¶¶ 8-9.  Fellah worked as a Campus Security Assistant with Hunter College's Department of Public Safety for approximately six years until Cregan's assault on February 27, 2019.  *Id.* ¶¶ 1, 7, 14.  Starting in approximately 2016, Fellah was assigned to work as a security

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Amended Complaint. Dkt. 37 ("Am. Compl."); *see also Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiffs' favor").

guard at Hunter College's Voorhees Building, an annex located several miles from the main college campus. *Id.* ¶¶ 16-17.

As Hunter College's Director of Public Safety, Foelsch oversaw all public safety staff at the college including Fellah. *Id.* ¶ 10.  Lyons, who was one of Fellah's senior supervisors, reported to Folesch. *Id.* ¶ 11.  Both Foelsch and Lyons had the power to hire and fire employees, establish and pay their wages, maintain employment records, and receive, review, and remedy discrimination complaints. *Id.* ¶¶ 10-11.  Miller and Guzman, both CUNY Peace Officers, were two of Fellah's immediate supervisors, and would assign work duties, ensure Fellah and other employees were performing their duties, and receive, review, and remedy discrimination complaints. *Id*. ¶¶ 12-13.

At the Voorhees Building, Fellah worked with Cregan, a facilities maintenance engineer. *Id*. ¶¶ 15, 17.  Fellah alleges that unspecified Defendants had "received prior complaints about Cregan's violent, racist, bigoted, and anti-immigrant behavior," and that "[a]s a result of these prior incidents Cregan, who had previously worked on the main campus of Hunter College and at Hunter College's School of Social Work, was transferred to the isolated location at the Voorhees building."  *Id*. ¶ 36.  "From the first day" of them working together, Cregan harassed Fellah for being Muslim. *Id.* ¶ 18.  Cregan once tricked Fellah into eating pork, *id.*, repeatedly commented to Fellah that "Muslims are terrorists," *id.* ¶ 19, told Fellah that he "only owns a gun because he does not trust Muslims," *id.*, told Fellah that Islam is the "wrong" religion and that he should cease practicing it, *id.* ¶ 20 (internal quotation marks omitted), and made comments to Fellah reflecting "anti-immigrant beliefs," *id.* ¶ 21.  Fellah complained more than once about Cregan's behavior to his supervisors, including Miller and Guzman, who told Fellah to bring his complaints to Lyons. *Id.* ¶ 22.

On July 6, 2017, Fellah and Cregan were working at the Voorhees Building with a CUNY Peace Officer named Ajiokumbo Falade. *Id.* ¶ 24. When Fellah and Falade turned their cars on several minutes prior to the end of their shifts, Cregan "became enraged" and removed the key from Falade's car. *Id.* Cregan screamed at Falade and called him obscenities before advancing towards him and waving his finger in his face. *Id.* Falade told Cregan that if he had a problem he should speak to Lyons, Falade's supervisor. *Id.* ¶ 25. Cregan responded that he "didn't 'give a fuck about Lieutenant Lyons'" and that he was "the boss of security at the Voorhees Building" and so "Falade needed to get Cregan's permission to do anything at the Voorhees Building." *Id.* ¶ 26. When Fellah approached Falade and Cregan, Cregan started "screaming and cursing" at Fellah and pointed his finger in Fellah's face. *Id.* ¶ 27. As he left, Cregan told Falade and Fellah to "watch what's going to happen to you assholes[.]" *Id.* (internal quotation marks omitted).

Fellah and Falade reported this incident to Miller and Guzman. *Id.* ¶ 28. Miller said that "she did not know what to do" and "shortly thereafter called [Fellah] and Falade back and advised them to each send a written report of the incident to Foelsch." *Id.* Other than offering this advice, Miller and Guzman "took no other action." *Id.*

Fellah did send an email to Foelsch, Lyons, and another public safety supervisor describing the incident. *Id.* ¶ 29. A meeting with Fellah, Cregan, Cregan's supervisor, one of Fellah's supervisors, and Falade followed. *Id.* ¶ 30.[2] Fellah was told at this meeting to "try to get along with everyone" and to "keep the workplace professional" while Cregan was not reprimanded. *Id.* Fellah told all present at the meeting that he was not comfortable working with Cregan and "explained Cregan's recurring anti-Muslim and anti-immigrant comments," before requesting a transfer which was denied. *Id.* Despite the complaints made by Fellah, Falade, and others,

---

[2] Fellah does not allege that Miller was present at this meeting. Am. Compl. ¶¶ 29-30.

Defendants failed to discipline or train Cregan, or otherwise take steps to protect Fellah from his harassment, threats, and violence. *Id.* ¶ 36.

Falade was later transferred out of the Voorhees Building and no other Peace Office replaced him, resulting in Fellah and Cregan working alone together. *Id.* ¶ 31. Cregan and Fellah worked together until February 27, 2019, and "[e]very time they saw each other, Cregan made a discriminatory and hateful comment about [Fellah]'s religion, race, national origin, ethnicity, and/or status as an immigrant," causing Fellah to "repeatedly beg[] for a transfer." *Id*. ¶¶ 37-38.

On February 27, 2019, Fellah arrived at work a few minutes late. *Id.* ¶ 39. When Fellah exited his car, Cregan began screaming at Fellah, advanced towards him, poked him in the chest, and said "we need to end this now." *Id.* (internal quotation marks omitted). After Fellah told Cregan not to touch him, Cregan punched Fellah several times, knocking him to the ground. *Id.* As Fellah lay on the ground, Cregan struck him multiple times in the head with a metal shovel, knocking him unconscious. *Id.* ¶ 40. Cregan continued to strike Fellah after he lost consciousness. *Id.* Cregan was arrested by New York City police officers while Fellah was taken to Bellevue Hospital where he was treated for injuries to his head, neck, back, spine, shoulder, and hip. *Id.* ¶¶ 41-42.

## B.    Procedural History

Fellah received a right-to-sue letter from the U.S. Equal Employment Opportunity Commission dated March 4, 2020. Am. Compl. ¶ 4. Fellah initiated this lawsuit in New York Supreme Court, New York County, on May 26, 2020, and Defendants removed the action to this Court on August 13, 2020. Dkt. 1; *see* Am. Compl. ¶ 6. Fellah filed an Amended Complaint on February 7, 2021, alleging eight claims of discrimination, hostile work environment, and negligent supervision and retention under federal, state, and New York City law. *Id.* ¶¶ 44-113. Fellah's

First Cause of Action is against only CUNY and Hunter College, and alleges that those Defendants maintained and subjected him to a hostile work environment in violation of Title VII. *Id.* ¶¶ 44-54. Fellah brings his Second through Eighth Causes of Action against all Defendants, alleging: (2) race discrimination in violation of 42 U.S.C. § 1981, *id.* ¶¶ 55-63; (3) race, ethnicity, national origin, and religion discrimination in violation of 42 U.S.C. § 1983, *id.* ¶¶ 64-74; (4) hostile work environment in violation of NYSHRL section 296, *id.* ¶¶ 75-83; (5) aiding and abetting a hostile work environment in violation of NYSHRL section 296, *id.* ¶¶ 84-89; (6) negligent supervision and retention, *id.* ¶¶ 90-100; (7) hostile work environment in violation of NYCHRL section 8-107, *id.* ¶¶ 101-108; and (8) aiding and abetting a hostile work environment in violation of NYCHRL section 8-107, *id.* ¶¶ 109-113.

On January 17, 2022, Miller moved to dismiss the seven causes of action against her for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. 67. Miller primarily argues that Fellah's allegations are too conclusory, with her only alleged conduct being that she advised him to complain to Hunter College's Department of Public Safety management when he brought issues concerning Cregan to her attention. Dkt. 68 at 2. No other Defendant has moved to dismiss, and discovery is scheduled to close on January 3, 2023. Dkt. 82.[3]

## II. Standard of Review

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

---

[3] While CUNY asserted sovereign immunity as an affirmative defense in its Answer, *see* Dkt. 52 ¶ 120, CUNY has generally participated in this case. Although a defendant's sovereign immunity implicates this Court's subject matter jurisdiction, it is a jurisdictional defect that can be waived. *See Springfield Hosp., Inc. v. Guzman*, 28 F. 4th 403, 415-16 (2d Cir. 2022).

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

### III.  Discussion

**A.    The Federal Claims: 42 U.S.C. §§ 1981 and 1983 Discrimination**

Fellah's Third Cause of Action alleges discrimination based on race, ethnicity, national origin, and religion, in violation of 42 U.S.C. § 1983, Am. Compl. ¶¶ 64-74, and his Second Cause of Action alleges discrimination based on race, in violation of 42 U.S.C. § 1981, *id.* ¶¶ 55-63. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. "Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, protects public employees from various forms of discrimination, including hostile work environment and disparate treatment on the basis of race." *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015) (internal quotation marks and alterations omitted). Section 1981 states, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

The analyses under sections 1983 and 1981 are similar, and a plaintiff can establish a hostile work environment claim under either section by showing that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment." *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  *Id.* at 321 (internal quotation marks omitted).  The conduct at issue "must be sufficiently continuous and concerted in order to be deemed pervasive" and the court must "consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* (internal quotation marks omitted).[4]  Additionally, for an individual to be liable under section 1981 or section 1983, she must be "'personally involved in the alleged deprivation'" of rights, *Littlejohn*, 795 F.3d at 314 (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)).

To plausibly plead a claim of employment discrimination under section 1983, a plaintiff must "establish that the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action or the hostile [work] environment."  *Naumovski v. Norris*, 934 F.3d 200, 213 (2d Cir. 2019).  Ultimately, whether a particular defendant had discriminatory intent is governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

---

[4] Because Miller does not contest the existence of a hostile work environment caused by Cregan, the Court assumes that Fellah has pleaded successfully one's existence for the purposes of this Opinion and Order.

(1973).  But at the motion to dismiss stage, a plaintiff must only "alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  "The question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'"  *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 570).

Fellah's theory of Miller's liability under section 1983 appears to be one of supervisory liability.  In essence, he alleges that Miller, as one of Fellah's supervisors, condoned the hostile work environment created by Cregan by failing to take appropriate measures upon receiving Fellah's complaints about Cregan's discriminatory and threatening comments.  *See, e.g.*, Am. Compl. ¶¶ 22, 28.  In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit "h[eld] that after *Iqbal*, there is no special rule for supervisory liability" under section 1983.  *Id.* at 618; *see Iqbal*, 556 U.S. at 677 (rejecting argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution").[5] Instead, the Second Circuit emphasized that, just as with claims against any other defendant, "a

---

[5] Prior to *Tangreti*, plaintiffs in this Circuit could rely on the following five categories of evidence to establish liability for a supervisory defendant:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).

Fellah makes few allegations with respect to Miller.  He claims that Miller had the ability to assign work duties and remedy discrimination complaints, Am. Compl. ¶ 12; received Fellah's complaints "about Cregan's discriminatory comments" "[o]n more than one occasion," *id.* ¶ 22; told Fellah only to complain to Lyons about those comments (which he did), *id.* ¶¶ 22-23; received Fellah's report about Cregan aggressively confronting Falade and then Fellah on or about July 6, 2017 after they started their personal cars before their shifts ended, *id.* ¶ 28; *see also id.* ¶¶ 24-27; and advised Fellah to make a written report about that July 6, 2017 incident, *id.* ¶ 28.  Although Fellah levels other allegations about unspecified "Defendants" in general, *see, e.g., id.* ¶¶ 32, 36, there are no other allegations specific to Miller and "lumping all the defendants together" with "no factual basis to distinguish their conduct" is insufficient to state a claim, *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001).

Fellah's allegations as to Miller fail to state a section 1983 claim.  First, Fellah has not pleaded Miller's personal involvement in a hostile work environment because at most his allegations establish that Miller failed to take sufficient action to remedy Fellah's work situation, and because they fail to allege that she did anything to actively create a hostile work environment for Fellah.  These allegations, without more, are insufficient to allege Miller's personal involvement under section 1983.  *Cf. Wilson v. Hanrahan*, 804 F. App'x 58, 62 (2d Cir. 2020) (holding that section 1983 claim for hostile work environment against the plaintiff's supervisor failed at summary judgment in part because it was unclear what discriminatory events had been reported to the supervisor, and the supervisor's own conduct was not sufficient to create a hostile

work environment despite multiple remarks from the supervisor); *see also Quinones v. City of Binghampton,* No. 19 Civ. 1460 (GLS) (ML), 2022 WL 43764, at *5 (N.D.N.Y. Jan. 5, 2022) (holding that the allegation that the defendant "failed to take any ameliorative action after receiving notice of pervasive racism" was insufficient to demonstrate personal involvement (internal quotation marks omitted)); *Peck v. Cnty. of Onondaga, N.Y.*, No. 21 Civ. 651 (DNH), 2021 WL 3710546, at *10 (N.D.N.Y. Aug. 20, 2021) (holding that the failure to remedy discriminatory conduct by others is insufficient to constitute personal involvement following *Tangreti*).

Second, even if Miller's alleged actions constituted personal involvement on her part, the Amended Complaint lacks factual allegations from which to infer that Miller was aware that Fellah was experiencing a hostile work environment based on his race, ethnicity, nationality, or religion. Fellah's allegations that he made "more than one" complaint to Miller about "discriminatory comments," Am. Compl. ¶ 22, without any further details of what he conveyed to Miller, do not establish that the conduct Miller knew of caused "changes in [Fellah's] 'terms and conditions of employment'" since "offhand comments, and isolated incidents (unless extremely serious)" do not constitute such a change. *Harris v. NYC Hum. Res. Admin.*, No. 20 Civ. 2011 (JPC), 2021 WL 3855239, at *9 (S.D.N.Y. Aug. 27, 2021) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)). While the July 6, 2017 incident that Fellah reported to Miller, as alleged, reflected troubling workplace behavior, it involved an escalating dispute between Cregan and Falade, in which Fellah chose to intervene fearing that Cregan might assault Falade. Am. Compl. ¶¶ 24-27. More importantly, nothing in the Amended Complaint indicates that Cregan's conduct on July 6, 2017 was motivated by a protected characteristic or that Cregan made any discriminatory comments during that day's dispute. Rather, this dispute, as alleged, concerned Cregan's negative and aggressive reaction to employees starting their cars before the end of their shifts. *Id.* ¶ 24.

Thus, even assuming that Fellah conveyed to Miller all the details set forth in the Amended Complaint regarding the July 6, 2017 incident, there is no reason to conclude that this incident arose from any discriminatory conduct by Cregan that would be actionable under section 1983. Without such allegations, Fellah has not alleged any reason to conclude that Miller possessed knowledge that this incident contributed to a hostile work environment on the basis of a protected characteristic.

In the absence of allegations that would allow for the inference of knowledge of such circumstances on Miller's part, it is impossible to conclude that Miller had any intent, let alone discriminatory intent, to subject Fellah to a hostile work environment based on a protected characteristic. Nor is it possible to conclude that Miller's responses upon receiving Fellah's complaints—*i.e.*, twice telling Fellah that he should report the incidents up the chain—were insufficient.[6] Fellah's section 1983 claim against Miller fails for this reason as well.

As with a claim for denial of equal protection under section 1983, "discriminatory intent is a necessary element of a § 1981 claim." *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 368 (S.D.N.Y. 2006); *see Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) ("[A] plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that

---

[6] While in the Title VII context an employer has a "duty to take reasonable steps" to eliminate even a "discriminatory atmosphere in the workplace" once she "ha[s] knowledge" of it, *Russell v. N.Y. Univ.*, 739 F. App'x 28, 31 (2d Cir. 2018) (internal quotation marks and alterations omitted), it is unclear whether this theory of liability applies in the section 1983 context following *Naumovski* and *Tangreti*, *see Wilson*, 804 F. App'x at 62 (requiring higher showing of personal involvement for section 1983 claims). Additionally, even were that theory available, the actual context of the atmosphere known to the employer is crucial in determining whether a duty is triggered. *See Eka v. Brookdale Hosp. Med. Ctr.*, 247 F. Supp. 3d 250, 269 (E.D.N.Y. 2017).

the discrimination was intentional.").  For the same reasons stated above, the Court dismisses

Fellah's section 1981 claim against Miller.[7]

## B.       The New York State and New York City Human Rights Laws Claims

### 1.       Fourth and Seventh Causes of Action:  Hostile Work Environment Claims

Fellah's Fourth Cause of Action brings a hostile work environment claim against Miller

under the NYSHRL, Am. Compl. ¶¶ 75-83, and his Seventh Cause of Action brings such a claim

under the NYCHRL, *id.* ¶¶ 101-108.  Both New York State and New York City law prohibit

employment discrimination, including a hostile work environment, on the basis of race or national

origin.

Section 296(1)(h) of the NYSHRL now makes it

> [A]n unlawful discriminatory practice . . . [f]or an employer, . . . to subject any
> individual to harassment because of an individual's race . . . [or] national
> origin . . . regardless of whether such harassment would be considered severe or
> pervasive . . . .  Such harassment is an unlawful discriminatory practice when it
> subjects an individual to inferior terms, conditions, or privileges of employment
> because of the individual's membership in one or more of these protected
> categories.

---

[7] Fellah's section 1981 claim must be dismissed for the additional reason that he fails to
allege whether Miller was aware of any *racially* based comments or actions on the part of Cregan.
As discussed, the Amended Complaint alleges that Fellah complained to Miller about comments
by Cregan that reflected religious bias, and that he alerted her to Cregan's July 6, 2017 actions
towards Falade and Fellah.  Nothing in the Amended Complaint allows for the conclusion that
Cregan's conduct on July 6, 2017 was racially motivated, let alone that Miller believed it to be so.
Therefore, Fellah's section 1981 claim against Miller also fails since "[o]nly race discrimination
is cognizable under Section 1981."  *Capek v. BNY Mellon*, *N.A.*, No. 15 Civ. 4155 (LTS) (AJP),
2016 WL 2993211, at *2 n.2 (S.D.N.Y. May 23, 2016); *see also Ahmed v. Mid-Columbia Med.
Ctr.*, 673 F. Supp. 2d 1194, 1204 (D. Or. 2009) (holding that discrimination based on the plaintiff's
Muslim religion was not actionable under section 1981).

NYSHRL § 296(1)(h).[8]  A corporate employee, even if she holds the title of manager or supervisor, is not subject to suit for discrimination under the NYSHRL.  *See Patrowich v. Chem. Bank*, 473 N.E.2d 11, 12 (N.Y. 1984) (per curiam); *accord Doe v. Bloomberg L.P.*, 167 N.E.3d 454, 459 (N.Y. 2021) ("[A] corporate employee simply does not qualify as an 'employer,' regardless of the employee's position or relationship to the employer" under the NYSHRL.); *id.* ("Accordingly, we held in *Patrowich* that the State HRL does not render employees liable as individual employers."). Miller, a CUNY Peace Officer, *see* Am. Compl. ¶ 12, was an employee of CUNY.  Because there is no allegation in the Amended Complaint to allow the conclusion that Miller was an "employer" within the meaning the NYSHRL, nor is it conceivable how she could be one given her role as a Peace Officer, Miller cannot have liability under section 296(1).  *See Stevenson v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 21 Civ. 355 (GWC), 2022 WL 179768, at *20 (W.D.N.Y. Jan.

---

[8] Fellah's Amended Complaint cites to section 296(1)(h) and the above statutory language. Am. Compl. ¶ 76.  Section 296(1)(h) came into law as a result of an amendment to the NYSHRL that had the effect of eliminating any requirement that "harassing or discriminatory conduct be 'severe or pervasive' for it to be actionable and [adopted] instead a more protective standard that prohibits conduct that results in 'inferior terms, conditions or privileges of employment.'" *Maiurano v. Cantor Fitzgerald Secs.*, No. 19 Civ. 10042 (KPF), 2021 WL 76410, at *3 n.2 (S.D.N.Y. Jan. 8, 2021) (quoting NYSHRL § 296(1)(h)).  But that amendment was signed into law on August 12, 2019, *see Europe v. Equinox Holdings, Inc.*, No. 20 Civ. 7787 (JGK), 2022 WL 4124763, at *7 n.10 (S.D.N.Y. Sept. 9, 2022), with section 296(1)(h) taking effect "on the sixtieth day" thereafter, *i.e.* October 11, 2019.  S. 6577, 242d Leg. § 16(b) (N.Y. 2019).  Thus, section 296(1)(h) does not apply to causes of action accruing before October 11, 2019, such as Fellah's. *See Europe*, 2022 WL 4124763, at *7 n.10 (collecting cases); S. 6594, 242d Leg. § 4(d) (N.Y. 2019) (altering S. 6577's language such that the relevant revisions made by S. 6577 "shall only apply to claims accrued under such sections on or after the effective date of such sections").  Prior to October 11, 2019, allegations of a hostile work environment under the NYSHRL most likely would have fallen under section 296(1)(a).  *See, e.g., Mejia v. T.N. 888 Eighth Ave. LLC*, 95 N.Y.S.3d 168, 170 (App. Div. 2019).  Section 296(1)(a), which was not amended by the legislation that established section 296(1)(h), makes it unlawful "[f]or an employer or licensing agency" to discriminate against an individual "in terms, conditions or privileges of employment" based on the person's "race, creed, color, national origin," and other specified characteristics.  NYSHRL § 296(1)(a).  Because the offending individual still must have been an "employer" under this provision, the above textual analysis would apply with equal force had Fellah brought his claims under the section 296(1)(a).

20, 2022) (concluding that employees of New York State Department of Corrections cannot be "employers" under the NYSHRL).  Thus, the Fourth Cause of Action is dismissed with prejudice as to Miller.

Turning to the Seventh Cause of Action, the NYCHRL makes it "an unlawful discriminatory practice . . . for an employer or an employee or agent thereof, because of the actual or perceived . . . race . . . national origin . . . or immigration or citizenship status of any person . . . to discriminate against such person in compensation or in terms, conditions or privileges of employment."   NYCHRL  § 8-107(1)(a).  This statutory language is thus similar to the corresponding language in the NYSHRL, except that the City provision extends to employees. The New York Court of Appeals explained in *Bloomberg* that, for purposes of the NYCHRL, employees "may incur liability only for their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected conduct."  36 N.Y.3d at 460.  Because, as discussed below, the Court finds that Fellah has stated a claim against Miller under the aiding and abetting provision of NYCHRL section 8-107(6), it defers until after discovery the question of whether Miller may be found directly liable as an "employee" under section 8-107(1)(a) or as an "aider-and-abettor" under section 8-107(6).  *See Ahmad v. N.Y.C. Health & Hosps. Corp.*, No. 20 Civ. 675 (PAE), 2021 WL 1225875, at *15 (S.D.N.Y. Mar. 31, 2021) (taking the same approach with respect to determining liability under the NYSHRL).  The Court therefore denies Miller's motion to dismiss the Seventh Cause of Action.

### 2.      Aiding and Abetting Discrimination Claims

Fellah also brings claims against Miller of aiding and abetting a hostile work environment in violation of both the NYSHRL and the NYCHRL in his Fifth and Eighth Causes of Action, respectively.   Am. Compl. ¶¶ 75-83, 109-113.  The NYSHRL provides that "[i]t shall be an

unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." NYSHRL § 296(6). Section 8-107(6) of the NYCHRL contains nearly identical language.

To state a claim for aiding and abetting discrimination under the NYSHRL, a plaintiff must allege that the defendant actually participated in the unlawful conduct such that "the aider and abettor share the intent or purpose of the principal actor." *Rahman v. Limani 51, LLC*, No. 20 Civ. 6708 (KMW), 2022 WL 3927814, at *7 (S.D.N.Y. Aug. 31, 2022) (internal quotation marks omitted); *see also McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (same).[9] "The same standard governs aiding and abetting claims under the NYSHRL and NYCHRL 'because the language of the two laws is virtually identical.'" *McHenry*, 510 F. Supp. 3d at 68 (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)). At the same time, "[c]ourts must analyze NYCHRL claims separately from any federal law claims and should construe the NYCHRL 'liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'" *Bueno v. Eurostars Hotel Co., S.L.*, No. 21 Civ. 535 (JGK), 2022 WL 95026, at *8 (S.D.N.Y. Jan. 10, 2022) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F. 3d 102, 109 (2d Cir. 2013)).[10]

---

[9] Plaintiff must also plead the existence of an employer and actions by the employer in violation of the Human Rights Laws. *McHenry*, 510 F. Supp. 3d at 68 n.7 (citing *Murphy v. ERA United Realty*, 674 N.Y.S.2d 415 (App. Div. 1998)). Since no party has challenged the sufficiency of Fellah's allegations against CUNY, for purposes of this Opinion and Order the Court treats this requirement as satisfied. *See id.* (taking the same approach); *Rahman*, 2022 WL 3927814, at *7 n.10 (same).

[10] The recent NYSHRL amendments directed courts to "construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.'" *Bueno*, 2022 WL 96026, at *8 (quoting N.Y. Exec. Law § 300) (alteration in original). However, this amendment only applies to claims that accrue as of the amendment's effective date of August 12, 2019. *See Europe*, 2022 WL

Because the underlying hostile work environment analysis is the same under the NYSHRL, Title VII, and section 1983, Fellah's aiding and abetting claim under the NYSHRL fails for the same reason as his section 1983 claim.  Because Fellah has not pleaded that Miller had knowledge that he was subjected to a hostile work environment, she cannot be said to have shared the "intent or purpose of the principal actor" in the existence of that environment.  *Rahman*, 2022 WL 3927814, at *7 (internal quotation marks omitted).  Otherwise, any supervisor to which Fellah complained about any conduct by Cregan could be held liable under an aiding and abetting theory. While under the NYSHRL a "supervisors' failure to take adequate remedial measures in response to a complaint of discrimination can, with proper factual allegations, constitute actual participation," *McHenry*, 510 F. Supp. 3d at 68 (internal quotation marks omitted), the supervisor needs, at the minimum, to be sufficiently aware of enough of the underlying conduct to understand its discriminatory nature, *see id.* at 76-77 (holding that an email to a supervisor reporting a "intolerable and hostile work environment" was insufficient to plead that the supervisor actually participated in aiding and abetting harassment when it did not mention underlying sexual harassment or gender discrimination).

However, "[t]he standard for maintaining a hostile work environment claim is lower under the NYCHRL than under the [pre-amendment] NYSHRL and Title VII."  *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 414 (S.D.N.Y. 2017).  "Under the NYCHRL, a plaintiff need not demonstrate that the treatment was 'severe or pervasive' to demonstrate a hostile work environment. . . .  Instead, a plaintiff need only show that she has been treated 'less well' than

---

4124763, at *7 n.10 (noting that the amendment did not apply retroactively and was signed into law on August 12, 2019).  The Court therefore proceeds under the previous standard.

other employees because of a protected characteristic." *Id.* (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 36 (App. Div. 2009)).

Fellah's allegations that he complained about Cregan's discriminatory comments to Miller and that Miller took no action to remedy Cregan's conduct sufficiently state a claim of aiding and abetting discrimination under the NYCHRL.  Fellah alleges that Miller was one of his "immediate supervisors" who had the power to "receive, review and remedy discrimination complaints."  Am. Compl. ¶ 12.  He further alleges that he complained to Miller and others, "[o]n more than one occasion," "about Cregan's discriminatory comments" about his religion and immigration status. *Id.* ¶ 22; *see also id.* ¶¶ 19-21.  Following those complaints, Fellah alleges that he reported the July 6, 2017 interaction among Cregan, Falade, and Fellah to Miller, and that Miller took "no other action to protect [Fellah] from further harassment, threats or violence" other than to advise him to "make written reports of Cregan's abuse and threats."  *Id.* ¶ 28.  Given the liberal construction the Court must afford the NYCHRL, the lower requirements under that statute for actionable conduct than its state and federal counterparts, and the need to draw all inferences in Fellah's favor at this stage, the allegations in the Amended Complaint allow for the inference that Miller shared the "intent or purpose" of Cregan to treat Fellah "less well" because of his religion and immigration status, even though a similar inference cannot be reached under the higher bar of the pre-amendment NYSHRL.  Therefore, the Court grants Miller's motion to dismiss the Fifth Cause of Action, and denies her motion as to the Eighth Cause of Action.

### 3.  Negligent Supervision and Retention

Fellah's Sixth Cause of Action alleges negligent supervision and retention against Miller. Am. Compl. ¶¶ 90-100.  To state a claim under New York law for negligent supervision or retention, a plaintiff must plead three elements in addition to the standard elements of negligence:

> (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels.

*FAT Brands Inc. v. PPMT Cap. Advisors, Ltd.*, No. 19 Civ. 10497 (JMF), 2021 WL 37709, at *6 (S.D.N.Y. Jan. 5, 2021) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)).

The Amended Complaint is devoid of any allegations that Miller had an employer-employee relationship with the alleged violator, *Cregan*. Rather, the Amended Complaint alleges that Miller supervised *Fellah*. Am. Compl. ¶ 12. Fellah's only response is that "[i]t remains to be seen what Miller's role was in connection with Cregan's employment," and then points to allegations that he contends demonstrate Miller's knowledge of Cregan's propensity for violence, awareness of Fellah's discrimination complaints, and knowledge of Cregan's unfitness for the job. Dkt. 69 at 12. But that does not allege an employer-employee relationship between Miller and Cregan. The Sixth Cause of Action is therefore dismissed.

### 4.   Leave to Amend

Lastly, the Court considers whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Fellah has not asked the Court for leave to amend his Complaint. "But even when a party does not ask for leave to amend, the Court may grant leave to amend *sua sponte*." *In re Garrett Motion Inc. Sec. Litig.*, No. 20 Civ. 7992 (JPC), 2022 WL 976269, at *18 (S.D.N.Y. Mar. 31, 2022) (internal quotation marks omitted) (collecting cases). When deciding whether to grant *sua sponte* leave to amend, "courts will consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility." *Morales v. Kimberly-Clark Corp.*, No. 18 Civ. 7401 (NSR), 2020 WL 2766050, at *9 (S.D.N.Y. May 27, 2020). After considering these factors, the Court will grant

Fellah leave to file a Second Amended Complaint, in the event Fellah believes he can plead facts to support his Second, Third, Fifth, and/or Sixth Causes of Action against Miller in a manner that would adequately state a claim upon which relief may be granted, consistent with this Opinion and Order.  In granting leave to amend, the Court notes that Fellah's previous amendment was not prompted by a judicial finding of deficiency of his original Complaint. *See* Dkt. 32.  Additionally, because some of Fellah's claims against Miller survive, Miller would not be unduly prejudiced by an amendment, and she is on notice as to the basic circumstances underlying Fellah's claims.  The Court emphasizes, however, that Fellah should amend only if he is able to resolve the pleading deficiencies outlined in this Opinion and Order.

## IV.  Conclusion

For the foregoing reasons, the Court grants Miller's motion to dismiss in part and denies it in part.  The Court dismisses Fellah's Second, Third, Fifth, and Sixth Causes of Action against her without prejudice and his Fourth Cause of Action against her with prejudice.  The Court grants Fellah leave to amend to replead his Second, Third, Fifth, and Sixth Causes of Action against Miller, in the event he believes he can replead those claims in a manner that would address the deficiencies identified herein.  Should he choose to file a Second Amended Complaint, Fellah must do so no later than thirty days from the date of this Opinion and Order.  The Court denies Miller's motion to dismiss the Seventh and Eighth Causes of Action.  The Clerk of the Court is respectfully directed to close the motion pending at Docket Number 67.

SO ORDERED.

Dated: September 30, 2022
      New York, New York
                                   JOHN P. CRONAN
                            United States District Judge